E-FILED
Monday, 21 June, 2010  09:51:33 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| INTEGRATED LIVESTOCK AND MANAGEMENT COMPANY, ) | |
| Plaintiff, ) | |
| v. ) | No.  09-CV-1350 |
| PURE CATTLE, LLC and GARY EDWARDS, ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on Defendants' motion to vacate an order of attachment, and Plaintiff's motion to dismiss counterclaims and strike an affirmative defense.  For the reasons below, the Court recommends that the order of attachment be vacated and that the counterclaims for fraud be dismissed, without prejudice.

### Background

On October 1, 2009, Plaintiff filed a complaint in Knox County Circuit Court, charging Defendants with breach of an oral contract regarding

farming operations.  Under the agreement, Defendants leased farmland and farm equipment from Plaintiff.  (Complaint, d/e 1-9).  Plaintiff seeks to recover over $200,000.00 due under that alleged contract, or pursuant to a theory of quantum meruit.  Id.

On October 2, 2009, before Defendants were served, Plaintiff moved to attach the proceeds of an auction of Defendants' property located in Roseville, Illinois (Warren County).  (d/e 1-6).   The Knox County Circuit Court entered an order of attachment that day, directing the Sheriff of Warren County to serve the attachment order on garnishee Van Adkisson Auction, LLC.  The garnishee, Van Adkisson Auction, LLC, has not appeared in this action.

Defendants were served with the state court complaint on October 9, 2009, after the attachment order issued.  (d/e 1, ¶ 9).  Shortly thereafter they removed the case to federal court on the basis of diversity and filed a motion to vacate the attachment order.  Judge Mihm denied Plaintiff's motion to remand on March 15, 2010, bringing the present motions to the fore.

## Analysis

## I. Motion to Vacate Attachment

Defendants argue that the attachment order must be dissolved because it was issued to the Warren County Sheriff, instead of the sheriff "of the county in which the action is commenced," as required by 735 ILCS 5/4-110.  That section provides in pertinent part:

> The order for attachment required in the preceding section shall be directed to the sheriff (and for purpose only of service of summons, to any person authorized to serve summons), or in case the sheriff is interested, or otherwise disqualified or prevented from acting, to the coroner of the county in which the action is commenced. . . . Such order shall order the officer to attach so much of the estate, real or personal, of the defendant, to be found in the county. . . .

Attachment proceedings must be commenced in the county where the property is located or in the county where the defendant is found. Hinman v. Rushmore, 27 Ill. 509, 510 (1862)("It is a rule of law, in order to give the court jurisdiction in an attachment case, there must be service on the defendant or his property, and the action must be commenced where the defendant has property, or where he can be found."); House v. Hamilton, 43 Ill. 185, 1867 WL 5004 *2 (1867)(Hancock County Court had no jurisdiction to enter attachment order where there was no levy or service in that county); J.S. Paterson Const. Co. v. First State Bank of Thebes,

133 Ill.App. 75, 1907 WL 1787 * 3 (4th Dist. 1907)("an attachment suit may

be commenced in any county where there is property, rights or credits of

the defendant to levy upon or garnishee."), *citing* Field v. Shoop, 6 Ill.App.

445, 1880 WL 10283 * 3 (2d Dist., 1880)("it appears that the suit [for

attachment] must be commenced in the county where there is property to

levy on, or where personal service can be had."); 735 ILCS 5/4-103 (civil

provisions on venue apply, and, attachment proceedings "may be brought

in the county where property or credits of the debtor are found."); 735 ILCS

5/4-112 ("Except as provided in Section 4-116 of this Act, the order for

attachment may be levied only in the county in which the order is entered,

and by a proper officer of that county.").[1]

If the attachment proceedings are begun in the proper county, and

the court has directed an attachment order to the sheriff in that county, then

the court may also certify attachment orders to other counties.  735 ILCS

5/4-118 ("The creditor may, at the same time, or at any time before

---

[1]735 ILCS 5/4-116 allows an officer to pursue and take property in any county, if the defendant is "in the act of removing any personal property," and to return the property to the county in which the attachment order issued.  This section addresses whether a sheriff with an attachment order from one county may travel to another county to serve it.  The attachment order must still be issued in the proper county.  See House v. Hamilton, 43 Ill. 185 (1867)(attachment suit initiated in Hancock County with order to Hancock County sheriff could not be served in Knox County under this section, where property was removed 12 days before proceedings initiated).

judgment, cause a certified copy of an order for attachment to be issued to any other county in the State where the debtor may have property liable to be attached, . . . ."); *see also* <u>Haywood v. McCrory</u>, 33 Ill. 459, 464 (1864) ("Before writs of attachment can be issued to counties, other than that wherein the suit is brought, the suit must be commenced in a proper county.  Levy upon property or service must be made upon one or more of the defendants in such county, or no jurisdiction will be acquired."); <u>Field</u>, 6 Ill.App. 445 (Jo Daviess Court issued writ to Jo Daviess Sheriff to attach property in Jo Daviess County; second writ issued by same court to sheriff of Ogle County).

Here, Plaintiffs assert that Knox County was a proper county in which to commence the attachment proceedings because they have alleged that the principal place of business of Defendant Pure Cattle, LLC ("Pure Cattle"), is in Knox County.  Pure Cattle's operating agreement, however, specifies Indianapolis, Indiana as its principal office (d/e 17-2, ¶ 1), and it is undisputed that its members are both citizens of Indiana (which establishes diversity jurisdiction).  (d/e 17-1).[2]  In its Answer, Pure Cattle admits that it

---

[2]Plaintiffs' affidavit for attachment also averred that the defendants' residence was Indianapolis, Indiana, and that defendants were "Indiana residents . . . about to leave the State of Illinois.").  (d/e 1-2, paras. 2, 4).

is authorized to do business in Illinois, (d/e 18, ¶ 1), but denies that it has a principal place of business in Knox County, Illinois.  (d/e 18, ¶ 2). Additionally, the summons to Pure Cattle bore an address in Indianapolis, Indiana, not an address in Knox County, (d/e 1-10), and the Knox County Circuit Court did not direct any attachment order to the Sheriff of Knox County for service on any defendant in the county or to levy any property in Knox county.

It appears, then, that Knox County was the wrong county in which to initiate attachment proceedings.  None of the attached property is located in Knox County, nor could any of the defendants be served in Knox County. Knox County Circuit Court could not have issued an attachment order to the Knox County Sheriff, because there was no property to attach in Knox County, and no defendant to serve in Knox County.  If the Knox County Circuit Court could not have issued an attachment order to the sheriff of Knox County, then it had no authority to issue attachment orders to other counties under 735 ILCS 5/4-118; Haywood v. McCrory, 33 Ill. at 464; Hinman v. Rushmore, 27 Ill. 509 (1862)(Cook County court had no jurisdiction to issue attachment order because neither property nor

defendant were in that county; therefore, second writ issued to attach property in Livingston County was without jurisdiction).

The cases cited by Plaintiff are distinguishable because the original orders of attachment in those cases issued in the county where the property was located.  *See* Haywood v. McCrory, 33 Ill. 459 (1864)(original attachment order was issued in county where suit was brought, was directed to sheriff of that county, and was served on one of the defendants in that county); Lord v. Babel, 16 Ill.App. 434 (1st Dist. 1885)(order issued to sheriff of county in which suit brought; garnishee was located in same county); Knebelkamp v. Fogg, 55 Ill.App. 563 (3d Dist. 1894)(two attachment orders issued: one to sheriff of county in which attachment proceedings were begun, and the other to the sheriff of another county); Hicks v. Midwest Transit, Inc., 2006 WL 644814 (S.D. Ill. 2006)(no discussion of where original order of attachment issued, but noting that Illinois law is clear that "circuit court has the power to attach assets outside the county in which it sits so long as the suit itself was commenced in the proper county").

The Court accordingly believes that the order of attachment must be quashed because the Knox County Circuit Court did not have jurisdiction to

enter it.  The proper county in which to commence attachment proceedings appears to be Warren County, where the property is located.

## II.  Motion to Dismiss Counterclaims and Strike Affirmative Defense

Defendants assert counterclaims for common law fraud and violations of the Illinois Consumer Fraud Act.  They also assert an affirmative defense of undue influence.[3]

The counterclaims and defense are based on an alleged conflict of interest and breach of fiduciary duty by Ronald Stombaugh.  Stombaugh is an attorney who allegedly represented Defendant Gary Edwards, and two companies owned by Edwards and his wife, Pure Cattle and Strild Cattle, LLC.  (d/e 18, ¶ 5).  As their attorney, Stombaugh thus owed fiduciary duties to Defendants.  Stombaugh is also the President of Plaintiff Integrated Livestock and Management Company ("Integrated Livestock).

Stombaugh, as President of Integrated Livestock, allegedly breached his fiduciary duty to Defendants and exercised undue influence upon them by causing Defendants to pay Integrated Livestock over $700,000, "for the direct financial benefit of Ronald Stombaugh."  (d/e 18, ¶¶ 8-9). Stombaugh also allegedly "act[ed] on behalf of the Defendants in various matters

---

[3]Other affirmative defenses are asserted, but they are not at issue.

relating to the cattle business while representing Mark Ray and other parties having a potential inconsistent interest to Defendants/ Counter-Plaintiffs and failed to disclose said representation . . . ."  (d/e 18, ¶ 3).  Defendants contend that the alleged oral contract upon which Integrated Livestock seeks to recover is the product of Stombaugh's breach of his fiduciary duties and exercise of undue influence. (d/e 18, ¶¶ 3-4).

### A.  Counterclaims for Fraud

Defendants first counterclaim is for common law fraud, alleging that Stombaugh's undue influence and breach of fiduciary duties fraudulently induced Defendants to pay Integrated Livestock over $700,000, and to enter into transactions with other third parties that were not in Defendants' best interests.  The second counterclaim is under the Illinois Consumer Fraud Act, based on the same allegations.

Plaintiff moves to dismiss the fraud claims for failure to state a claim. The Court agrees that, as currently pled, Defendants fail to state claims for fraud.

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Factual allegations are accepted as true and must

give "'fair notice of what the . . . claim is and the grounds upon which it

rests.'"  EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77

(7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955,

1964 (2007)(other citation omitted).  However, the "' . . . allegations, [must]

show that it is plausible, rather than merely speculative, that [the plaintiff] is

entitled to relief.'"  Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir.

2008)(quoted and other citations omitted).   "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct

alleged. . . . Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  Ashcroft v.

Iqbal, 129 S.Ct. 1937, 1949-50 (2009), *citing* Twombly, 127 S.Ct. 1955.

Legal conclusions, unsupported by alleged underlying facts, are not entitled

to "the assumption of truth."  Id. at 1951.

Additionally, Federal Rule of Civil Procedure 9(b) requires the

circumstances of a claim for fraud to be alleged with particularity.

> Under Rule 9(b), a plaintiff must state with
> particularity "all averments of fraud or mistake."
> *Fed.R.Civ.P. 9(b); see also Gen. Elec. Capital Corp.*
> *v. Lease Resolution Corp.,* 128 F.3d 1074, 1078
> (7th Cir.1997). The circumstances of fraud or
> mistake include "the identity of the person who

made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Gen. Elec. Capital,* 128 F.3d at 1078 *(quotation omitted); see also DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990) (describing Rule 9(b) particularity as "the who, what, when, where, and how: the first paragraph of any newspaper story").

Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing, 536 F.3d 663, 668 (7th Cir. 2008).

A fraud claim must be based on a misrepresentation—a "knowingly . . . false statement of material fact." Kinn v. Prairie Farms/ Muller Pinehurst, 368 Ill.App.3d 728, 733 (2d Dist. 2006). Defendants do not identify any false statement of material fact, much less the when, where and how of that misrepresentation. Their allegation that the undue influence and breach of fiduciary duty amounted to fraud does not give fair notice, either under Rule 8 or Rule 9, of the factual grounds for the fraud claims. For the same reason, they state no claim for a violation of the Illinois Consumer Fraud Act. In short, Defendants do not say and have not pled what the misrepresentation(s) or deception(s) was/were.

Defendants contend that undue influence is a form of fraud, and that therefore no more facts need be stated. The cases cited, though, involved

claims by clients against the attorneys who owed them fiduciary duties, not claims against a corporation.  Additionally, those cases were based more on claims for breach of fiduciary duty and undue influence, which might be forms of fraud but which are also actions in their own right.  <u>Maksym v. Loesch</u>, 937 F.2d 1237, 1241 (7th Cir. 1991)(unsuccessful claim by client against attorney based on retainer agreement)(recognizing that "self-dealing in the course of a fiduciary relationship is indeed a form of fraud–usually called 'undue influence,' . . ."); <u>In re Marriage of Pagano</u>, 154 Ill.2d 174, 185 (1992)(rebuttable presumption of undue influence when retained attorney enters into transaction with client); <u>Sinclair v. Bloom</u>, 1995 WL 348127 (N.D. Ill., 1995)(not reported in F.Supp.)(claims by clients against attorney for exercising undue influence in transactions to clients' detriment).

Defendants might have a claim against Stombaugh, individually, for breach of fiduciary duty and/or legal malpractice arising from the violation of his fiduciary duties to them as clients.[4]  <u>Kling v. Landry</u>, 292 Ill.App.3d 329, 335 (2d Dist. 1997)("a fiduciary relationship exists between an

---

[4]The Court states no opinion on what those claims might be, nor the viability of same.  The Court means only to demonstrate that, if such claims exist, they would be against Stombaugh, individually, and not against Integrated Livestock, because Stombaugh was the one who owed and the one who may have breached fiduciary duties.

attorney and his client as a matter of law" and breach of that duty by putting self-interest above client's gives rise to an action for proximately caused damages); <u>Parus Holdings, Inc. v. Banner & Witcoff, Ltd.</u>, 585 F.Supp. 2d 995, 1005 (N.D. Ill., 2008)(dismissing breach of fiduciary claim against attorney as duplicative of malpractice claim); <u>Owens v. McDermott, Will & Emery</u>, 316 Ill.App.3d 340, 351 (1ˢᵗ Dist. 2000)("Generally, a claim against an attorney for breach of fiduciary duty falls under the rubric of professional malpractice.").  A breach of fiduciary claim against Stombaugh, individually, even if considered a form of fraud, would not be subject to Fed. R. Civ. P. 9(b)'s particularity requirements.  <u>Sinclair v. Bloom</u>, 1995 WL 348127 * 13 (N.D. Ill. 1995)(not reported in F.Supp.)(attorney's breach of fiduciary duty to client not subject to Rule 9(b) pleading standard, though defendant argued that fiduciary claim was "ultimately premised on fraud").  Defendants, however, are not now pursuing any claims against Stombaugh.

If Defendants are trying to pursue a breach of fiduciary duty claim directly against Integrated Livestock, the Court agrees with Plaintiff that no plausible inference arises that Integrated Livestock owed any fiduciary duty to Defendants.  *See* <u>Overbey v. Illinois Farmers Insurance Co.</u>, 170

Ill.App.3d 594, 605 ("Absent a fiduciary relationship, there is no basis for a cause of action alleging breach of fiduciary duty").  The fiduciary duty at issue here was that between a lawyer and his clients.  Though Stombaugh allegedly used Integrated Livestock as an instrument to breach that fiduciary duty, it is still the fiduciary duty of Stombaugh, not of Integrated Livestock.  However, as discussed below, Integrated Livestock may be barred from enforcing the oral contract and benefitting from Stombaugh's misconduct.

The Court recommends dismissal of the fraud claims for failure to state a claim.  However, Defendants ask for leave to file an amended complaint, so the Court will recommend that the dismissal be without prejudice.

### B.  Affirmative Defense of Undue Influence

In their first affirmative defense, Defendants allege that Stombaugh owed them a fiduciary duty, and that "[t]he alleged contract was the result of the undue influence of Ronald Stombaugh, and therefore void as a matter of law."  (d/e 28, p. 10).  Plaintiff argues that Integrated Livestock owed no fiduciary duty to the defendants, and therefore the affirmative defense gives no notice of "how Ronald Stombaugh's alleged fiduciary

relationship as their attorney resulted in undue influence by Integrated Livestock." (d/e 22, ¶ 26).

Defendants contend that Integrated Livestock is vicariously liable for the acts of its agents, and Stombaugh was acting as Integrated Livestock's agent in his role as President.  It is true that "[u]nder general agency rules, a corporation (principal) will be vicariously responsible for the wrongful acts of its employees (agents) when the acts are: (1) related to and committed within the course of employment; (2) committed in furtherance of the corporation; and (3) authorized or subsequently acquiesced in by the corporation."  Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1306 (7th Cir. 1987).  Stombaugh did not act as Integrated Livestock's agent when he allegedly violated his fiduciary duties arising from his legal representation of Defendants.  Those duties were not within the scope of Stombaugh's services to Integrated Livestock as President of the company.

However, the contract might still be voidable because of Stombaugh's control over Integrated Livestock.  Stombaugh was allegedly the President of Integrated Livestock and its principal shareholder at the same time he owed fiduciary duties to Defendants' as their attorney. (d/e 18, ¶ 2).  He allegedly used his position as President to cause

Integrated Livestock to enter into business transactions with Defendants that he would not have been able to enter into on his own because of those fiduciary duties, and he directly benefitted from those agreements.  The agreements might be rescindable in light of Stombaugh's control over Integrated Livestock and his knowledge of his fiduciary duties to Defendants.  *See*, *e.g.*, Niccum v. Meyer, 171 B.R. 828, 834-35 (N.D. Ill. 1994)(client may either rescind transaction or sue for damages, based on attorney's purchase, through his corporation, of client's company; finding attorney individually liable for transaction).  Accordingly, at this point, the Court believes that this affirmative defense should remain in for further development.

WHEREFORE, the Court recommends that Defendants' Motion to Vacate and Dissolve the Order of Attachment and to Quash its Levy be granted (d/e 9).  The Court further recommends that Plaintiff's Motion to Dismiss and Strike be granted in part and denied in part (d/e 22).  The Court recommends that the counterclaims for fraud be dismissed without prejudice, and that the affirmative defense of undue influence remain in for further development.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of ECF  copy of this Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1).  Failure to timely object will constitute a waiver of objections on appeal.  <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.

ENTER:    June 21, 2010

*s/ Byron G. Cudmore*

_____

BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE